**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LORIE J. MARSHALL and DEBRA | ) | |
| RAMIREZ, individually and on behalf of | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 08-CV-0591-MJR |
| | ) | |
| H&R BLOCK TAX SERVICES INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

I.     **Introduction and Overview of Case**

In January 2002, Laurie Marshall and Debra Ramirez filed suit in State court against H&R Block, Inc., and H&R Block Group, Inc., alleging statutory fraud by omission in violation of the Illinois Consumer Fraud Act ("ICFA") and "the substantially similar statutes of specific sister states," and breach of fiduciary duty.   The First Amended Complaint ("FAC"), filed June 7, 2002, alleges statutory fraud - selling  insurance without a license in violation of the ICFA and "the substantially similar statutes of specific sister states"; statutory fraud - unfair practice; statutory fraud by omission; statutory fraud - cramming; and breach of fiduciary duty.   On August 18, 2008, Block removed the action to this federal district court, asserting subject matter jurisdiction under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) (Doc. 2).

1

In brief, Plaintiffs allege that this is a deceptive sales and marketing omissions case predicated on Block's failure to disclose the same material information to each class member. The action arises from Block's sale of the "Peace of Mind" guarantee ("POM") to its tax preparation clients since January 1, 1997. POM is an extended-warranty product under which consumers are paid additional taxes owed as a result of a tax-preparation error. POM reimburses Block's clients for payment of additional taxes they may owe as the result of (1) any error by Block; (2) a change in the tax law; and/or (3) a change in the IRS's interpretation of the tax law. Plaintiffs allege that the overwhelming majority of Block's clients never have a POM claim because their returns are so simple that the likelihood of error by Block of additional taxes being owed is remote.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs move for certification of the following two classes (collectively the "Class"):

**Rule 23(b)(3) Class**:

All persons residing in Arizona, California, Connecticut, Florida, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York and North Carolina who purchased POM since January 1, 1997.

**Rule 23(b)(2) Class**:

All persons residing in Arizona, California, Illinois and New Jersey (Doc. 45).[1]

The motion is fully briefed, and a hearing was held to address the issues

---

[1]The Court notes that the current proposed classes differ from the class identified in the FAC: "All persons who were charged a fee for the 'Peace of Mind' guarantee by H&R Block or a defendant H&R Block class member." FAC, p. 6, ¶ 30.

2

therein on April 30, 2010.  For the reasons set forth below, the Court **DENIES** Plaintiffs' motion for class certification (Doc. 45).

II.     <u>**Plaintiffs' Motion for Class Certification**</u>

Plaintiffs request an order determining that this case should proceed as a class action against Block.  They assert that they have met the requirements of Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs further claim that a class action is the appropriate tool for the adjudication of this action.  Block maintains, to the contrary, that Plaintiffs have failed to meet those requirements, and, as a result, this Court should deny the motion for class certification.

Rule 23 of the Federal Rules of Civil Procedure governs class actions. Where a plaintiff seeks class certification, the court should not consider the merits of the case. *Wiesmueller v. Kosobucki*, **513 F.3d 784, 787 (7th Cir. 2008)**; *Chavez v. Illinois State Police*, **251 F.3d 612, 629-30 (7th Cir. 2001).**  Plaintiffs seeking class certification bear the burden of proving the action satisfies the four requirements of Rule 23(a) - numerosity, commonality, typicality, and adequacy of representation.  *Harper v. Sheriff of Cook County*, **581 F.3d 511, 513 (7th Cir. 2009)**.  "Failure to meet any of the Rule's requirements precludes class certification." *Id.* **(quoting** *Arreola v. Godinez,* **546 F.3d 788, 794 (7th Cir. 2008))**.  Once all of the requirements of Rule 23(a) are satisfied, Plaintiffs' claims must fall within at least one subsection of Rule 23(b).  *Arreola*, **546 F.3d at 797**.  In this case, Plaintiffs seek to certify classes under Rules 23(b)(2) and 23(b)(3).

The Court first turns to the question of whether the requirements of Rule

3

23(a) are satisfied.

    A.    <u>Rule 23(a) - Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." **Fed. R. Civ. P 23(a)(1)**. Plaintiffs "cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impractical for numerosity purposes." ***Arreola***, **546 F.3d at 797 (citing** *Roe v. Town of Highland*, **909 F.2d 1097, 1100 n. 4 (7th Cir. 1990))**. However, if Plaintiffs are unable to provide exact numbers, "a good faith effort is sufficient to establish the number of class members." *Jenkins v. Mercantile Mortg. Co.*, **231 F.Supp.2d 737, 744 (N.D.Ill. 2002) (citations omitted)**.

In this case, Plaintiffs assert that Block's own documents show that Block has sold millions of POM insurance contracts. Block does not contest numerosity. Accordingly, the Court finds that the first requirement of Rule 23(a) is met.

    B.    <u>Commonality</u>

Rule 23(a)(2) requires that questions of law or fact common to the class must be present. The Rule insists that the class be "reasonably homogeneous." ***Culver v. City of Milwaukee***, **277 F.3d 908, 910 (7th Cir. 2002) (citing** *Sosna v. Iowa*, **419 U.S. 393, 403 n. 13 (1975))**. "The fact that there is some factual variation among the class grievances will not defeat a class action." ***Rosario v. Livaditis***, **963 F.2d 1013, 1017-18 (7th Cir. 1992) (citing** *Patterson v. General Motors Corp.*, **631 F.2d 476, 481 (7th Cir. 1980))**. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule

4

23(a)(2)." *Id.* **(citing** *Franklin v. City of Chicago,* **102 F.R.D. 944, 949-50 (N.D.Ill. 1984);** *see also Keele v. Wexler,* **149 F.3d 589, 594 (7th Cir. 1998) (There need only be at least one question of law or fact common to the class)**.

   As Plaintiffs' counsel, Mr. Macrae stated at the hearing on the motion for class certification, commonality cannot really be disputed because it only requires a single common question of law or fact.  Doc. 86, Hrg. Trans. 18:19-20.  The Court agrees that Plaintiffs have met their burden in showing that at least one question of law or fact common to the class is present.  Consequently, the Court finds that the commonality prong of Rule 23(a)(2) has been met.

   **C.** <u>**Typicality**</u>

   A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory.  *De La Fuente v. Stokely-Van Camp, Inc.,* **713 F.2d 225, 232 (7th Cir. 1983)**.  As a result, a proposed class member's claim is not typical if proof "would not necessarily prove all the proposed class members' claims." *Ruiz v. Stewart Assocs.,* **167 F.R.D. 402, 405 (N.D.Ill. 1996)**.  The purpose of the typicality requirement is to ensure that the interests of the class representatives are aligned with those of the class as a whole.  *See Insolia v. Philip Morris Inc.,* **186 F.R.D. 535, 544 (W.D.Wis. 1998)**.

   A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente,* **713 F.2d at 232 (citations and internal**

**quotation omitted)**. Not every class member need suffer the same injury as the class representatives, for typicality may be found even where "there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *Rosario*, **963 F.2d at 1018;** *De La Fuente*, **713 F.2d at 232**.  As summarized by the Seventh Circuit in *Oshana v. Coca-Cola Co.*, **472 F.3d 506 (7th Cir. 2006)**,

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.  **472 F.3d at 514 (quotation marks and citations omitted)**.

The named Plaintiffs' claims arise from the same practice or course of conduct (the sale of POM) that gives rise to the claims of other class members and are based on the same legal theory (violation of the ICFA and substantially similar statutes of specific sister states).  Accordingly, consistent with the Seventh Circuit's decisions in *De La Fuente* and *Oshana*, the Court finds that the typicality prong of Rule 23(a)(2) has been met.

### D.   <u>Adequacy of Representation</u>

The final prerequisite of Rule 23(a) is that the named Plaintiffs be adequate representatives of the Class.   Block does not dispute that Plaintiffs will fairly and adequately protect the interest of the class.  Doc. 86, 18:20-21.  Therefore, the Court does not address the adequacy of representation but finds that Plaintiffs adequately  represent the class.

In sum, the Court finds that the Class has satisfied the requirements of Rule

23(a) and will now turn its attention to the question of whether Plaintiffs' claims fall within the parameters of Rule 23(b)(2) and (b)(3).

      E.      **Rule 23(b)(2)**

Rule 23(b)(2) provides that certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;..." **Fed. R. Civ. P. 23(b)(2)**; *see also* **advisory committee's note ("The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.")**. "When the main relief sought is injunctive or declaratory, and the damages are only 'incidental,' the suit can be maintained under Rule 23(b)(2). *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) (collecting cases)**. Therefore, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members." *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D.Ill. 1992).

The insurmountable hurdle Plaintiffs face is that the FAC, under which this action proceeds, contains no mention of injunctive or declaratory relief. Each of the five counts seeks damages "in an amount to be proven at trial." The prayer for relief does not ask for injunctive or declaratory relief but instead asks for money damages "in no event to exceed $75,000 per class member." Interestingly, although Block devoted several pages in its response to the class certification motion to this issue, Plaintiffs did not mention it in their 15-page reply. So, Block threw down the gauntlet, and Plaintiffs did not pick it up.

Under the Federal Rules of Civil Procedure's requirement of notice pleading, defendants in all lawsuits must be given notice of the specific claims against them.  ***See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief")**. Although this notice does not require pleading specific facts, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* **550 U.S. 544 (2007) (quoting** *Conley v. Gibson,* **355 U.S. 41, 47 (1957))**. In *Erickson v. Pardus,* **551 U.S. 89 (2007)**, the Supreme Court "reiterated that '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Brooks v. Ross* **578 F.3d 574, 581 (7th Cir. 2009) (quoting** *Erickson,* **551 U.S. at 93)**.

This Court cannot certify a class based on theories or claims that Plaintiffs did not plead - and apparently have no intention of pleading.[2]  As Block's counsel, John Clear, said at oral argument, Plaintiffs cannot have their cake and eat it.  They have had ample opportunity to amend their complaint and have not done so.  Even if the amended complaint had included a prayer for injunctive or declaratory relief, this case could not be certified under 23(b)(2) because the final form of relief sought and - if certifiable - obtained would be monetary.  This issue was long since laid to rest by the Seventh Circuit in  *Simer v. Rios,* **661 F.2d 655 (7th Cir. 1981)**.  The pleadings in *Simer* actually go beyond the instant

---

[2]The Court notes that despite a year having passed since this case was remanded, Plaintiffs have not moved to amend their complaint.

case because in *Simer*, Plaintiffs "attempt[ed ] to characterize their complaint as one for declaratory and injunctive relief," but it was "clear that the final form of the relief obtained would be monetary in nature." **661 F.2d at 669**. The Court concluded, "Class certification under (b)(2) is not appropriate where the relief requested (or in this case obtained) is monetary in nature." ***Id.* (citing  *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D.Del. 1974), *aff'd*, 611 F.2d 32 (3d Cir. 1979); 3B Moore's Federal Practice P 23.45(1) at 23-322).**   Here, Plaintiffs have not even attempted to characterize their complaint as one for declaratory or injunctive relief, and the final form of relief sought is purely and patently monetary in nature.  Class certification under (b)(2) is not appropriate, and the motion for class certification under this Rule will be denied.

    **F.**  <u>**Rule 23(b)(3)**</u>

    Plaintiffs seek to certify an 11-state consumer fraud class under Rule 23(b)(3). They submit that these 11 states meet the requirements of Rule 23 because common issues predominate and class adjudication is superior to any other available method.  Block counters that the Court cannot certify a multi-state class because of material differences in the consumer fraud laws of the class states.  Plaintiffs reply that class members' claims are governed by the same legal rules; all class members were exposed to the same information; and no differences in state law prevent certification.

    "Certification under Rule 23(b)(3) requires that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the

fair and efficient adjudication of the controversy.'" *Pella Corp. v. Saltzman,* **606 F.3d 391, 393 (7th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3))**.

### 1.   Whether common issues of law predominate

The law of this circuit instructs,

> No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed.R.Civ.P. 23(a), (b)(3). Yet state laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes. *In re Bridgestone/Firestone, Inc.,* **288 F.3d 1012, 1015 (7th Cir. 2002) (citing** *Isaacs v. Sprint Corp.,* **261 F.3d 679 (7th Cir. 2001);** *Szabo v. Bridgeport Machines, Inc.,* **249 F.3d 672 (7th Cir. 2001);** *In re Rhone-Poulenc Rorer Inc.,* **51 F.3d 1293 (7th Cir. 1995))** *See also Thorogood v. Sears, Roebuck and Co.* **547 F.3d 742 (7th Cir. 2008) (reversing certification of multi-state consumer class because variances in state consumer fraud laws rendered the class unmanageable)**.

Application of multiple states' laws to class members' claims may eliminate common questions among the class members. *Szabo,* **249 F.3d at 677 ("unlikely that dealers in different parts of the country said the same things to hundreds of different buyers");** *Rhone-Poulenc,* **51 F.3d at 1301 (Common questions among class members may be sensitive to precise state formulations; "[i]f not, one begins to wonder why this country bothers with different state legal systems.")** For that reason, the Seventh Circuit has repeatedly refused to approve multi-state consumer fraud classes because the difficulty inherent in applying the laws of various class states defeats both predominance and manageability. *Szabo,* **249 F.3d at 677-78**; *Bridgestone/Firestone,* **288 F.3d at 1018-19 (single class not manageable where claims must be adjudicated under the law of so many jurisdictions - and, because fact-specific, not manageable even on a statewide**

basis); *Thorogood,* **547 F.3d at 746**. Even differences in state laws that amount to "nuances" suffice to make multistate classes inappropriate. *Rhone-Poulenc,* **51 F.3d at 1300 ("nuance can be important");** *see also Carnegie v. Household Int'l., Inc.,* **220 F.R.D. 542, 549 (N.D. Ill. 2004)("impossible for one jury to take into account the nuances" of the applicable standards of multiple states)**. Where class claims are governed by varying laws of multiple jurisdictions, class certification is not appropriate. *Phillips v. Sears, Roebuck & Co.,* **2008 WL 2003186, at \*6 (S.D. Ill. May 8, 2008)("[t]he Seventh Circuit has put an end to most multistate consumer class cases")**.

The Court notes that the only multi-state consumer class certified by a district court and thereafter affirmed by the Seventh Circuit since the appellate court's decisions in the line of cases detailed above is *Saltzman v. Pella Corp.,* **257 F.R.D. 471 (N. D. Ill. 2009),** *aff'd,* **2010 WL 1994653 (7th Cir. May 20, 2010)**, wherein Judge Zagel took an approach to class treatment that entailed multiple single-state subclasses and individualized proceedings to address loss causation and damages for each class member. Plaintiffs in the current proceeding have proposed no subclasses, no discrete "issue" certification, and no trial plan whereby the Court could determine whether subsequent individual proceedings are manageable and superior. Moreover, unlike the instant matter, *Saltzman* involved a common predominant issue amenable to class treatment: "whether the windows suffer[ed] from a single, inherent design defect leading to wood rot." *Pella Corp. v. Saltzman,* **606 F.3d 391, 393 (7th Cir. 2010)**. In sum, the Court finds that *Saltzman* is not analogous to the matter *sub judice.*

The Court has carefully reviewed the exhaustive surveys of state law provided by both parties, Doc. 55, Exh. 35; Doc. 57, Exh. 7, as well as the relevant statutes and case law. Here, again, Plaintiffs have attempted to use the motion to certify the class to amend the FAC, in which fraud by omission is only one of five claims made or legal theories advanced. Plaintiffs "define down" their legal theories to the single theory of deceptive omissions.

All elements of each state's consumer protection statute must be considered. Plaintiffs cannot sidestep this required analysis by relying upon an omissions theory and focusing on only two elements – reliance and materiality – to the exclusion of others, such as proximate cause, wrongful intent, damages, and statutes of limitations. Plaintiffs assert that, in the case of omissions, the consumer protection laws of all 11 class states have eliminated reliance as a required element and have adopted an objective test of materiality. However, four of the 11 class states (Arizona, North Carolina, California, and Florida) have rejected the notion of presumed reliance and have varying requirements for proof of actual reliance. Moreover, four of the class states (Michigan, North Carolina, Connecticut, and Florida) use a subjective test of materiality based upon the particular circumstances of each purchaser.

Variations in state law on these elements defeat class certification. "[C]ourts have repeatedly recognized that fraud claims are not appropriate for class certification" when reliance must be proven. **Miller v. Gen. Motors Corp., 2003 WL 168626, at *3 (N.D. Ill. Jan. 26, 2003); *see also Castano v Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("a**

12

fraud class action cannot be certified when individual reliance will be an issue").

Each proposed class state requires a showing of proximate causation, with legal requirements varying state by state. Doc. 57, Exh. 7. Courts routinely have found that variations in law and fact required to prove proximate causation in the consumer fraud context are a valid basis to defeat class certification. *See, e.g., Williams v. Ford Motor Co.,* **192 F.R.D. 580, 583, 585 (N.D. Ill. 2000)(denying certification under Illinois law for omissions claims);** *In re Currency Conversion Fees Antitrust Litig.,* **230 F.R.D. 303, 310-11 (S.D.N.Y. 2004)(denying certification under New York law for claim based on inadequate disclosures because "individual questions about causation would overwhelm" any common issues);** *Stern v. Philip Morris USA, Inc.,* **2007 WL 4841057 (N.J. Super. Ct. L. Div. Nov. 16, 2007)(denying certification under New Jersey law for claims based on "deception, misrepresentation, concealment, and omissions")**. Applying these multiple standards is an "impossible" task. *See Carnegie v. Household Int'l., Inc.,* **220 F.R.D. 542, 549 (N.D. Ill. 2004)("impossible for one jury to take into account the nuances" of the applicable standards of multiple states)**.

Consumer protection laws of the 11 class states also differ with respect to the issues of intent to deceive, damages and statutes of limitation. Some form of wrongful intent on the part of a defendant is an element of several of the class states' consumer protection laws, although the nature of the requirement varies considerably state by state. (Doc. 57, Exh. 7). There is no single measure of damages in the proposed 11 class states' consumer fraud laws, and the applicable statues of limitation range from as short as one

year to as long as six years. *Id.* These differences may be sufficient to deny class certification. *See, e.g., In re HP Inkjet Printer Litig.,* **2008 WL 2949265, at \*7 (N.D. Cal. July 25, 2008) (variances in "calculation of damages" under state consumer fraud laws require denial of multistate class)**.

However, the Court also notes that, although individualized statute of limitations determinations weigh against certification under Rule 23(b)(3), "courts have rejected a per se rule that the presence of such issues compels a finding that individual issues predominate." ***In re Fedex Ground Package System, Inc., Employment Practices Litigation,* 2007 WL 3027405, \*26 (N.D.Ind. 2007) (citing *In re Linerboard Antitrust Litigation,* 305 F.3d 145, 162 (3rd Cir. 2002) ("[T]he mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.") (additional citation omitted).** "Rather, '[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).'" ***Id.* (citation omitted)**.

Here, the Court finds no "sufficient constellation of common issues" to bind this class together. The authorities cited by Plaintiffs do not support the class certification they are requesting. For example, Plaintiffs cite to ***Allen v. American Honda Motor Co., Inc.,* 264 F.R.D. 412 (N.D. Ill. 2009)**, but class certification in ***Allen*** was vacated by the Seventh Circuit in April of this year because the district court failed to rule on the admissibility of expert opinion prior to class certification. ***See American Honda Motor Co., Inc. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010)**. The Court finds no evidence that a

14

subsequent order on class certification has been entered.  Plaintiffs rely heavily on *Saltzman*, but, as set forth above, that case is distinguishable from and not controlling in the instant case.  A very weak reed upon which Plaintiffs lean is the Ninth Circuit opinion in *Yokoyama v. Midland Nat'l Life Ins. Co.*, **594 F.3d 1087 (9th Cir. 2010)**.  *Yokoyama* concerned only a single-state class (Hawaii), and certification was based on uniform written offering materials which controlled every purchase.[3]  The Ninth Circuit reversed and remanded the action, finding that because the proper inquiry *under Hawaii law* was the effect upon a reasonable consumer, not a particular consumer, there were no individualized issues of reliance.  *Id.* **at 1094**.  It is unclear what this decision has to say to the current proceeding, a multi-state class action (in which Hawaii is not a class state) in which there is no uniform material controlling each purchase.

As to the existence of a fiduciary relationship, the class which Plaintiffs propose to certify to address breach of fiduciary duty entails consideration of the individual facts and circumstances of each of the purchasers and their tax preparers to establish whether the particular circumstances of each transaction qualifies under the particular laws of each state.  Plaintiffs cite no prior decision in which such a class has been certified to address a purported breach of fiduciary

---

[3]Defendant required its brokers to sign the following certification:
"I certify that the Company disclosure material has been presented to the applicant. I have made no statements which differ in any significant manner from this material. I have not made any promises or guarantees about the future value of any non-guaranteed elements." ***Yokoyama*, 594 F.3d at 1090**.

duty claims in comparable circumstances. Their citation of classes certified to address ERISA claims (*see Lively v. Dynegy*, 2007 WL 685861 (S.D. Ill. Mar. 2, 2007)) is plainly inapposite: ERISA is governed by specific federal laws and regulations, which define the fiduciary relationship between an ERISA trustee and members of a qualified plan. Class treatment of an ERISA claim does not resemble the type of class proceedings Plaintiffs propose in this case.

The Court has examined the fiduciary duty laws of the 11 class states and concludes that there are material differences in several key respects. First, there is no global definition among the laws of the class states as to what constitutes a fiduciary relationship, but, rather, varying standards are applied. Doc. 57, Exh. 8. To decide these claims on a class-wide basis, the Court would have to instruct the jury not just on the varying general standards but also the "nuances" of these various standards according to the laws of each state**. *See Thorogood*, 547. F.3d at 746; *Carnegie v. Household Int'l., Inc.*, 220 F.R.D. 542, 549 (N.D. Ill. 2004) ("impossible for one jury to take into account the nuances" of the applicable standards of multiple states). *See also Rohfling v. Manor Care, Inc.*, 172 F.R.D. 330, 341 (N.D. Ill. 1997) ("even if we assume that fiduciary duty law, in its broad outlines, is similar from state to state, it may be meaningfully different with respect to its nuances")**.

Second, the laws of the 11 class states differ materially with respect to the recoverability of punitive damages and the applicable statutes of limitation. Doc. 57, Exh. 8. No single standard for the recovery of punitive damages emerges from the class states. ***In re Baycol Prods. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003) (holding that plaintiffs could not demonstrate predominance by failing to account for slight differences in state laws)**. The proposed class states' statutes of limitation for fiduciary duty diverge greatly, from two years to six

16

years.  Divergent statutes of limitation pose a significant obstacle to class certification.  *See Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 688-89 (D. Kan. 2007).

Substantial differences in fiduciary duty laws have been the basis to deny multi-state class treatment in both the Seventh Circuit and elsewhere.  *Rohfling*, 172 F.R.D. at 341-342 **(denying certification of 13-state class)**; *Doll*, 246 F.R.D. at 690 (18 proposed class states "do **not employ a single standard governing liability for breach of fiduciary duty")**.  The Court concludes that common issues of law do not predominate in Plaintiffs' breach of fiduciary duty claims.

Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3) and have not met their burden of outlining a manageable way for the Court to deal with the variations in state law claims.  *Szabo*, 249 F.3d at 674; *Bridgestone/Firestone*, 288 F.3d at 1018; *Thorogood*, 547 F.3d at 746.

Plaintiffs have not provided the Court with any method for managing the individualized issues of state law outlined above.  Stated simply, the differences in the required proofs of the states' statutes demonstrate that a multi-state certification would not be manageable because of the multiple and different variables that would have to be proved as to each class member.  The Court therefore concludes that common issues of law do not predominate in Plaintiffs' consumer protection claims.

## 2.    Whether common issues predominate

"Under Rule 23(b)(3), a district court must determine whether 'the questions or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.'" *Siegel v. Shell Oil Co.,* **2010 WL 2977315, \*3 (7th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3);** *see also Oshana,* **472 F.3d at 513-14**.

Although disputed by Block, Plaintiffs submit that this is an omissions case. Plaintiffs point out that the FAC alleges, "Whether defendant and the defendant class of companies engaged in deceptive practice by failing to disclose that the peace of mind guarantee had little or no value." FAC, p. 7, ¶ 35(d). Additionally, Count III of the Complaint alleges "Statutory Fraud by Omission." FAC, p. 13. Specifically, the Complaint alleges, "By failing to disclose that the POM guarantee is of little or no value in contrast to the price paid by consumers, Block and the members of the defendant Block class engaged in deceptive practices in the course of conduct involving a trade or commerce." *Id.* at ¶ 66.

The omissions that Plaintiffs allege are that Block (1) failed to disclose the likelihood that a Class member would have a claim (variations based on, *inter alia,* marital status, adjusted gross income, complexity of the return, financial status and owing no taxes/due a refund); failed to disclose the amount of the average claim (median range of $1,073 to $1,236); and failed to disclose the commissions paid to tax preparers selling POM.

### a.    Franchisees and company-owned stores

One stumbling block to certification of the proposed class apparently not perceived by Plaintiffs is that a lack of uniformity exists between franchisees and company-owned stores in the sale of POM. While franchisees were permitted to use Block computer software, there was no requirement that they use it until approximately tax year 1999.

Def's Exh. 44, Kerr Dep., 120:22-121:3; Miscannon Aff., ¶5.  Franchisees are independent business owners who are not required to sell POM at all.  Def's Exh. 45, Kerr Dep.,  72:21-73:7; Def's Exh. 44, 131:1-11.  Franchisees paid Block a flat royalty on POM sales, so potential damages for franchisees' sales of POM would require different calculations and theories from those of company-owned offices.  *See* Def's Exh. 44, 157:8-11.  Additionally, while Block is alleged to have a duty to disclose sales commissions paid to tax preparers, Plaintiffs offer no evidence that franchisees paid any particular sales commissions to their preparers or that Block was privy to that information.  Plaintiffs offer no plan for how these distinctions would be addressed in litigating claims involving franchisees and company-owned offices.

### b.   <u>Screen shots and scripts</u>

Lack of uniformity is also found in the POM sales presentations.  The sheer number of purchasers, sales, offices and preparers weighs against uniformity.  Approximately 14.6 million POM sales were made between 2000 and 2010 in the 11 class states.  Schutte Aff. ¶3(a).  Because a number of the members of the proposed Class were repeat purchasers, the number of discrete POM purchasers involved in transactions between 2000 and 2010 is approximately 6.6 million.  *Id.*, ¶3(b).  In the 11 class states, more than 5,000 Block-branded tax offices with more than 48,000 tax preparers operated during tax season 2009 , and more than 4,400 offices with more than 42,000 tax preparers during tax season 2010.  Katz Aff. ¶¶2-5.  Block paid more than $90.9 million for POM claims in the 11 class states between 2000 and 2010.  Schutte Aff. ¶3(c).

Plaintiffs contend that class certification of their omissions theory is appropriate because the POM was presented uniformly to all class members. The evidence, however, cuts the other way and does not support a finding that a standard script was read verbatim to each POM purchaser and that this was the sum of communications between the purchaser and the preparer. Stated another way, Plaintiffs fail to demonstrate that what was said to each POM purchaser can be determined on a class-wide basis.

The tax preparation software developed by Block consists of a series of screens with prompts or discussion points to help tax preparers remember key points to raise with clients. The system includes a screen (or in later years, two screens) to prompt tax preparers to offer POM and to describe key features of the product. Def's Exh. 46, 24:5-21; Def's Exh. 44, 120:10-21.

The terms and conditions of the POM changed at various times during the proposed class period, as did the price ($20, $22, $27 and $30). Def's Exh. 46, Gaston Dep., 148:16-23; Doc. 85, Exh. A at 74:02-75:05. Moreover, the protection provided was capped at $4,000 until 2001 and at $5,000 during the remainder of the proposed class period. Def's Exh. 41 at 27:17-22, 82:2-25; Def's Exhs. 25 and 26.

According to Plaintiffs, tax preparers read the following script:[4]

_____

[4]Plaintiffs have continued to maintain that this is the script read by preparers throughout the class period when they are well aware that this is not correct. Plaintiffs themselves submitted, in support of their motion for class certification, the deposition of Matt Kerr, POM Director, wherein Plaintiffs' counsel reviewed screen shots for various years which differ significantly. Doc. 85, Kerr Dep., 38:9-39;5, 39:11-22; 45:20-46:9.

> H&R Block recommends our Peace of Mind Guarantee which extends our standard guarantee to cover payment of additional taxes, up to $4,000, in the event the IRS disagrees with the way your return was prepared. I will give you a printed copy of all terms and conditions.  Would you like this guarantee? (Y?/N)

First, the scripts varied in detail from year to year.  Def's Exhs. 20-33.[5]

Second, and more importantly, the script is clearly a kickoff point for a conversation between the preparer and the client, which would of necessity be individualized, depending on the concerns of the client (and, possibly, the loquacity of the preparer).  It defies common sense to suggest that these scripts would be read verbatim and that most or all clients would simply answer the question posed monosyllabically, "yes" or "no."

Putative class representatives, Marshall and Ramirez, describe conversations which led to their purchases of POM.   Marshall testified as follows regarding the first of her four purchases of POM:

> Q.    When you were told these things in 1997 by your tax preparer, did you ask any questions about Peace of Mind?
> A.    Just what it was for.
> Q.    Was your question answered?
> A.    Yes, ma'am.
> Q.    Have we already discussed that answer?
> A.    Yes, ma'am.
> Q.    Why did you decide to buy Peace of Mind in 1997?
> A.    Because I was afraid not to.

_____

[5]Some early scripts simply read:  "At this time, the preparer will review H&R Block's Peace of Mind Guarantee.  Would you like me to include this in your fee? Y/N."  Def's Exh. 22, 23.  Later scripts were much more detailed, providing information regarding underpayment reimbursement, audit representation and the length of coverage.  Def's Exh. 33.  Moreover, only the script for the year 2001 (Def.'s Exh. 25) "recommends" purchase of POM; other scripts merely offer or ask "are you interested" or "do you want to purchase."

Q.    Why were you afraid not to?

A.    Because I wanted my taxes to be right, and I didn't want to have to
- if they were incorrect, I didn't want to have to face the IRS by
myself.  Doc. 57, Marshall Dep., 41:13-25.

On the other hand, Ramirez stated that she did not recall being told anything about POM, asked no questions and did not purchase the product.  Doc. 57, Ramirez Dep., 40:2-5, 15-17; 41:4-6.  She testified that she was unaware that she had purchased POM on the single occasion alleged and that she did not look at her receipt until "[m]aybe six months" prior to filing the instant lawsuit, *i.e.,* from April 2001, to February 2008.  *Id.,* 42:14-16; 43:23-25. So, the testimony of neither Marshall nor Ramirez supports a finding that a uniform script was read to each Block client and that this was the sum of all communications between preparer and client.

The testimony of Matt Kerr is not to the contrary.  At Kerr's deposition, he testified that all of the tax preparers were "working off of the same script or content on their screen."  Def's Exh. 44, Kerr Dep., 122:23-123:1.  Plaintiffs rely on this testimony to support an inference that each sales presentation was the same.  But the statement "working off of the same script or content" does not demonstrate uniform use of an identical script.

c.    **Purchase decisions**

Plaintiffs have also failed to refute Block's contention that there was a lack of uniformity in consumer's POM purchase decisions.  In other words, the value of POM cannot be decided on a class-wide basis because of circumstances unique to individual

22

purchasers. Block's expert, Russell Sobel, opined that POM had significant value even for those consumers who ultimately did not need to file a claim. Doc. 57, Exh. 10, ¶ 1(b). According to Mr. Sobel, economic theory and evidence show that people buy such products as warranties, guarantees and insurance because they are risk-averse. In purchasing any of these items, these individuals gain the benefit of feeling more secure and worry less about having money to cover a possible, albeit unlikely, event.

Mr. Sobel pointed out that both Marshall and Ramirez had non-typical issues (compared to wage-earner-only income) on their tax returns that increased their likelihood of an audit. *Id*. at ¶ 2. Marshall had income from child support, an injured spouse claim and received discharge from a prior bankruptcy; in the year that Ramirez purchased the POM guarantee, she had income from worker's compensation.

Purchasers may be guided in their decision-making by their personal tax history, experience with audits (including information about audit experiences obtained from family and friends), tax examinations, their assessments of the quality of tax preparers, and their views of the risk of audit or error in the preparation of their taxes. The importance of the omissions identified by Plaintiffs - national, aggregate information regarding audit rates, error rates, claim rates or amounts and commissions paid to tax preparers - varies also, or, put succinctly, some, all or none of these omissions may be important to individual purchasers.

Lastly, it is impossible to know, given the thousands of transactions involved, what individual tax preparers told Block clients regarding any of the purportedly omitted

information.

### d.   Fiduciary relationship

No evidence exists in the record of any written agreement between Plaintiffs (and the putative class members) and Block in which the parties mutually agreed that a fiduciary relationship was established between the parties.  In the absence of a written agreement, the relationships between the class members and the Block tax preparers vary and their interactions are not appropriate for class treatment since the relationships would have to be individually examined to determine if any parties agreed to a fiduciary relationship and whether any conduct occurred that would trigger fiduciary responsibilities (such as the relinquishment of control over decision-making, the nature and extent of discretion vested in the purported fiduciary, the history of the parties' relationship, and whether that history evidenced any of the customary indicia of a special relationship of trust and confidence that would make it subject to the fiduciary duty laws of the various states).  Plaintiffs have pointed to nothing in the testimony of the named Plaintiffs that established any fiduciary or special relationship between themselves and their tax professionals or Block.

### III.   Conclusion

In summary, the Court concludes that Plaintiffs have not satisfied the requirements to certify a class under 23(b)(2) because the final form of relief sought is monetary in nature. Secondly, certification under Rule 23(b)(3) is inappropriate because Plaintiffs have failed to show that questions of law or fact common to the members of the class predominate over

24

any questions affecting only individual members.  For all of the foregoing reasons, the Court

**DENIES** Plaintiffs' Motion for Class Certification (Doc. 45).

**IT IS SO ORDERED.**

**DATED this 17th day of September, 2010**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**